The next case, Stinnett v. Delta Air Lines. May it please the Court, my name is Angel Antonio Castro III, appearing on behalf of the appellant, Venus Stinnett, in the hopes of overturning a premature decision to dismiss her case. The main issues surrounding the dismissal was, one, collateral estoppel that would prevent her claims, and two, insufficiency of her allegations and that some of her allegations lack merit completely. First, I would like to address the collateral estoppel claim, and when I'm reaching there, it's pertinent to consider that this case was removed from a New York State court and placed into a federal court. Under the Erie Doctrine, and to prevent forum shopping and the like, the federal courts should treat cases removed from state court as if, as the state court would treat those cases. So, it becomes an issue of substantive versus procedural law, if it's found to be a procedural matter, then the federal court rules would hold, but if it's a substantive matter, as it is here, where the party's behavior is implicated, then the state court method of handling it should hold. But even before we reach there, in order for collateral estoppel to apply, the issues need to have been fully litigated. Here, in Stannett 1, which was filed in the federal courts initially, her state claims were dismissed without prejudice, because the federal claims were denied and the lower court declined to take supplemental jurisdiction over the state claims. But wasn't there an alternative basis for the holding, instead of, in addition to collateral estoppel, didn't the district court take a look at the claims, the state claims that your client was pursuing, and determine that they were inadequately pled? Correct. And I was going to get to the sufficiency of the allegations later. But first, to get rid of that, the collateral estoppel, that was clearly inappropriate. But where the court was sitting on diversity jurisdiction, and the case was removed from state court. So under the CPLR, and the behaviors of the party, where the defense or the defendants and the appellees here were fully aware of Stannett 1, made mention of that when they never raised that in their motion. So here the appellant had no opportunity to argue against collateral estoppel. Now we can go forward into the sufficiency of the allegations. When considering the sufficiency of the state allegations here, the court should have been giving the appellant the most favorable inferences with regard to her facts. Well, the facts were that your client was an at-will employee who tested positive for both alcohol and cocaine, is that right? No, your honor. So there is a question of fact there. About what? That she was an at-will employee? About whether she actually tested positive for cocaine and alcohol. Well, the test results from Quest, let's put aside whether there's some valid objection to them, but the test results themselves were positive with respect to alcohol and cocaine, is that right? Yes, and the test results, as the record indicates, they aren't produced with the client's name, they're produced with an employee ID number. And the employee ID number on the test results did not match Ms. Donnette's or the appellant's employee ID number. So there's a sufficient question of fact whether she tested positive at all. But even if there was some mistake made, let's assume that there's a question of fact as to whether there's a mistake, how does that connect to a plausible claim of disability or gender discrimination, given that the employer was notified that she tested positive for alcohol and cocaine while in the job? Yes, so the employer was notified of this, and Ms. Donnette instantly contested it, and the record indicates that she asked for a retest and asked, and put forward some possible basis. And here I believe the lower court kind of conflated and the defendants and our appellees argued that she admitted that she was taking alcohol, that she admitted that she was using a cocaine-based medication. However, that's no. That was not admitted through her complaint. She did say that that may have been a possible reason, but she also at the same time alleged that the test results were completely inaccurate and that she was not intoxicated and did not use substances that would result in those positive test results. So that's another question of fact that would have prevented the motion to dismiss. Further, if you want to talk about the disability, while the complaint does allege that her disability was related to infertility and excessive nosebleeds, while we do maintain that those would be sufficient as a disability under the statute, we would also say that there's also a perceived disability. They took the nosebleeds and as... I don't quite understand your disability theory. Help me understand. You say that she was discharged because of the nosebleed and infertility problems, which were disabilities? So I'm saying that, yes, that those were disabilities and when... You're saying those were disabilities that she had. That she had, correct. And you're saying that she was discharged improperly by the airline in violation of the individual with disability statute. The state law statute, yes. So if we were to take that a little bit further and say these nosebleeds... I thought we were talking about a discharge because of a drug test. Exactly, and that's where I'm going. So the reason why they asked for the drug test is because they saw these nosebleeds and they thought that that may have been drug use or a result of drug use or something to that effect. So they asked for the drug test. So that leads us to believe that there was a perception of a disability, which may have been a drug and alcohol addiction. Yes, there's allegations that she had presented her medications each time when she was prescribed them so that the employer was aware of the medications that she was taking. Your claim, this record shows she told them that she had an infertility problem and she had a nosebleed problem prior to the discharge? That she makes those allegations, yes, in her complaint. Can I also ask you, could you point me to where in your blue brief you make any arguments with respect to Quest? I don't believe we made sufficient arguments against Quest. Okay. So you tell me, are you agreeing that by failing to make any arguments about Quest in your blue brief, would you agree that you've waived any arguments on appeal with respect to Quest? With respect to Quest, I would concede that, yes. Okay. Thank you. If the Court has any further questions. Good morning. May it please the Court. My name is Ira Rosenstein, law firm Morgan, Lewis & Bakke, representing Delta Airlines in this case. I think Judge Irizarry's decision is well-articulated and well-supported, and we've submitted papers that I think are also clear and I believe are also supportive of the district court's dismissal of this case. Remind me where you think you were in terms of collateral estoppel. Well, Judge Irizarry determined that collateral estoppel applied to certain of the claims. I think reading appellant's papers, there's some confusion over the concept of claim preclusion versus issue preclusion. Judge Irizarry did not determine that the claims were precluded. She concluded that the issues, certain of the issues were precluded, not all of them. She has the right, the district court has the right to make that determination sui sponte. We've cited several cases that support that right. Appellee did argue ---- Were we dealing with race judicata or collateral estoppel? On collateral estoppel. I'm sorry. I may not have understood. I may not have heard the question. You said ---- I thought you said that she proceeded on an issue preclusion fee. Right. Collateral estoppel, issue preclusion. She has the right to proceed on issue preclusion or collateral estoppel sui sponte. She has the right to do that by applying Federal law. The underlying decision that was the basis for preclusion was a Federal decision determined under Federal law. The fact that the case was ultimately brought back to Judge Irizarry based on diversity jurisdiction after she declined to exercise supplemental jurisdiction over those State and city claims in what we'll call Senate 1 doesn't change the analysis of her ability to make a determination that collateral estoppel, quite just as this Court, of course, has the ability to determine the propriety of dismissal based on the record that's before it. Which do you think is the more straightforward basis in your view that you should  And I guess my question is, on the collateral estoppel question, do you believe that this Court or the Supreme Court has spoken clearly enough about the Erie question about whether you follow New York or Federal law on collateral estoppel in a diversity case? Would that require us to make a decision of first impression? I believe this Court can determine based on the existing law on collateral estoppel, but not surprisingly, given the facts that are in this record, it was Delta's position that it was a simpler argument to simply raise that fact. We believed it was very clear that her misdemeanor State and city claims had to be dismissed for the same reasons that her Federal claims had been dismissed, which is that they were not plausibly they did not cross the line in any of the accounts from being conceivable to plausible, which is the standard. And so we thought it was a simpler argument to make below. I support your jurisdiction. Of course, after reviewing it, there was, as you can imagine, some second guessing about whether or not we ought to have made that argument more clearly. We looked at it, and I believe that there is support in the law for it. But as Judge Parker pointed out, there is, in every single situation where Judge Rosari determined that this case should be dismissed, she reached an alternative determination that it did not meet the standard, the basic pleading standards under Iqbal and Twombly and under general statutes, and it does not. And I would just point out, I mean, the record is in front of you. I am a little concerned with hearing in the able counsel's statement that the record suggested that Ms. Spinnett did not admit to using the cocaine-based solution because I — her complaint is very clear in paragraph 64 and 65, which are in the record, that she did use a cocaine-based solution. She went into great detail about the fact that she had a prescription allegedly from a doctor in the United States to fulfill a prescription for nosebleeds in the Dominican Republic, and to — and that she did fill that prescription. And I think she said that she applied it to her nose seven times. I think the record shows that the prescription was for cocaine. And I think the complaint describes the content, which was known to Ms. Spinnett when she took that solution. It was properly found to be implausible that she would take cocaine in her nose or a substance that had cocaine in her nose and then not test positive for cocaine. And she had conceded that point. There's some talk about whether or not there should have been an accommodation for bloody nose. There's nothing in the record to suggest that Ms. Spinnett was drug-tested because she had a bloody nose. But even if she was chosen for a test because of some condition, you know, in her nose, the fact remains that she tested positive for cocaine and alcohol, which is a fact that is frequently left out. And the complaint — correct me if I'm misremembering it — but the complaint alleges that she informed Delta about disability-related medications but not the cocaine HCL. Correct. And, of course, you know, accommodation is something Delta takes seriously as they do safety, which is — the flight attendant is a safety-sensitive position, of course. And Delta does accommodate for reasonable accommodations. And an alternative situation had Ms. — if the cyst on her ovary was a disability and had she said that she needed an accommodation or if she had said that she had frequent nosebleeds, there could have been an accommodation process. But accommodation is not something that's done retroactively after the fact. And I can assure you that an accommodation for nosebleeds would not have been to take a Dominican-prescribed cocaine solution in your nose while you were flying for Delta Airlines. So we think it's a fairly straightforward case for affirmation. There's also an issue in the case about whether or not there's a gender-related claim that relates to whether or not Ms. Stinnett should have been placed in rehabilitation as part of this process, which we've addressed in the papers. But there's one point that I didn't think we addressed in the papers that I thought I'd raise, which is rehabilitation is not a — something that's a punishment, of course. Rehabilitation is designed to help people who have medical conditions related to addictions rehabilitate themselves. Ms. Stinnett, and I do believe Judge Irizarry reached this conclusion correctly, has never stated that she is disabled because of an addiction. In fact, she's stated very clearly the opposite. She states that she has no addiction and that she was using cocaine because of this bloody nose, which showed at best very questionable judgment to use a cocaine solution to stop a bloody nose while you were flying on a flight, as did the choice of drinking before she went on the flight. So a combination would not have been putting her into a rehabilitation program. It's not penance for testing positive. You don't go into rehab because you did something wrong. You go into rehab as a medical condition. There are no other questions. Thank you very much. May it please the Court. I am Faye Caldwell, and I represent Quest Diagnostics Clinical Laboratory. I had a brilliant argument, but given the recent statement that an appellant has said that he has waived that Ms. Danette has waived all claims as to my client, I'm certainly happy to answer your questions, explain why there was no negligence. But barring that, I have nothing else to say as long as it's clear on the record that there was no case against my client. Thank you. Very briefly, Your Honors, I would like to address the matter of the rehabilitation. It was sufficiently alleged in the appellant's papers and complaint that there was a well-known established policy that employees that had drug issues were permitted to attend the rehab, and after successful completion of the rehab program, they would be considered for reinstatement. Here, Ms. Danette was offered that opportunity, and though she denied having any type of drug problem, she did undergo the rehab treatment in the hopes of being reinstated under that regard. There was an issue about whether the names and positions of the employees was it the amoxicillin or the cocaine? I believe that that's not clear through the pleadings. I believe, as counsel has stated, that there was a question of whether she presented the medication. I thought your client testified that she was taking both amoxicillin and cocaine for her nosebleed. I believe she alleged in her complaint that she was prescribed those drugs for those issues, but I think there's a question of fact if she's – Do you think it's a U.S. doctor that prescribed cocaine HCL? I believe so, yes, Your Honor. Did she fill the prescription in the Dominican Republic? I believe she had to get a new prescription in the Dominican Republic for the same drug. Okay. Why didn't she fill it in the States? I believe she had filled it in the States, but she just didn't have it during that flight, during that leg of the flight. But to go back to the statement of the similarly situated employees, I believe it would be premature on a motion to dismiss given that the appellant would lack the information. It would be the defendant, Delta, or the appellee, Delta, that would have that information with regard to the other employees that may have been similarly situated, that may have had a drug issue, that completed rehab, and that were reinstated under this well-known policy that was not questioned. So thus, it would be premature to dismiss based on that without some level of discovery. There's no further questions. Thank you. Thank you all, and we'll take it under advisement. That's the last case on the calendar today, so I will ask the clerk to adjourn court. Court is adjourned.